UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL H.,                      )
                                 )
    Plaintiff,              )
                                 )
v.                               )    2:17-cv-0447-JAW
                                 )
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
                                 )
    Defendant.              )

## ORDER AFFIRMING THE
## RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

The United States Magistrate Judge filed with the Court on August 31, 2018 his Recommended Decision. *Report and Recommended Decision* (ECF No. 19) (*Recommended Decision*). The Commissioner of the Social Security Administration filed objections to the Recommended Decision on September 14, 2018. *Def.'s Obj. to the Magistrate Judge's Report and Recommended Decision* (ECF No. 20) (*Def.'s Obj.*). Michael H. filed his response to the Commissioner's objections on September 28, 2018. *Pl.'s Resp. to Def.'s Obj. to the Magistrate Judge's Report and Recommended Decision* (ECF No. 21) (*Pl.'s Resp.*).[1] The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record. The Court has made a de novo determination of all matters adjudicated by the Magistrate

---

[1] The Commissioner filed a motion to strike Mr. H.'s response to her objection to the recommended decision, *Mot. to Strike Resp. to Obj. to Report and Recommended Decision* (ECF No. 22), and his response to her motion to strike. *Resp. to Mot. to Strike Resp. to Obj. to Report and Recommended Decision* (ECF No. 23). As the Court affirmed the Magistrate Judge's recommended decision, the Court dismisses the motion to strike as moot.

Judge's Recommended Decision. Although the Court concurs with the recommendations of the Magistrate Judge, the Court's analysis of the record differs somewhat from that of the Recommended Decision.

The Court offers the following additional discussion.

I.   **POSITIONS OF THE PARTIES**

   A.   **The Commissioner's Objection**

The Commissioner objects to the Recommended Decision on three grounds. First, she argues that the Magistrate Judge erred in elevating Dr. Leslie Susan Dixon's "one-page 'employability form' to the status of a treating source medical opinion" because "[p]laintiff failed to provide any evidence establishing that the doctor who prepared the form was a treating source." *Def.'s Obj.* at 1. Second, the Commissioner argues that the Recommended Decision "relies on *Mills* [*v. Apfel*, 244 F.3d 1 (1st Cir. 2001)] to impose an articulation requirement on the Appeals Council that neither *Mills* nor the Social Security Act or regulations require." *Id.* at 1 (citing *Recommended Decision* at 9-10). Finally, the Commissioner maintains that remand is not required on the basis that the Appeals Council did not consider the employability form because it is merely cumulative evidence. *Id.* at 1-2.

   B.   **Michael H.'s Response**

Mr. H. responded to the Commissioner's objections and raised additional reasons why the Appeals Council erred in its decision. *Pl.'s Resp.* at 1-2. First, Mr. H. notes that "this is a case where the Appeals Council, rather than acting in its usual capacity as a reviewing entity, chose to act as the fact finder and issue a *de novo*

decision." *Id.* at 3 (italics in original). He argues that this is relevant to several of the Commissioner's objections, including to the Appeals Council's handling of the Dixon report. *Id.* According to Mr. H., because the Appeals Council acted as a factfinder, it "specifically solicited new evidence prior to issuing its decision." *Id.* He also argues that "although the decision was issued by the Appeals Council, it is still subject to exactly the same scrutiny that would apply to any decision by an ALJ." *Id.*

In response to the Commissioner's argument that the Magistrate Judge improperly construed *Mills*, Mr. H. avers that "[t]he Defendant simply refuses to acknowledge that in this case the Council was not acting in its appellate capacity." *Id.* at 6. He further argues that the Recommended Decision "is not applying *Mills* to impose a greater requirement on the Council in the appellate role as discussed in *Mills* . . . . Contrary to the Defendant's argument, the Recommended Decision properly reviews the decision under the same standards as any other final decision of the Commissioner . . . ." *Id.*

Mr. H. disagrees that the Appeals Council was not required to consider the Dixon medical opinion because it was cumulative, contending that the limitations in Dr. Dixon's evaluation "are quite different from the limitations adopted by the ALJ in the RFC and, in turn, specifically adopted in the Council's superseding decision." *Id.* at 7 (citing *Recommended Decision* at 6-7).

Finally, Mr. H. raises additional issues he argues require reversal and remand of the Appeals Council's decision. *Id.* at 9. He contends that the evidence does not reflect the conclusion that Mr. H. did not have a severe impairment, and that the

3

Commissioner "failed to give good reasons for rejecting Ms. Beneck's opinions." *Id.* at 9-10.

## II. THE RECORD

### A. The Appeals Council Request

On March 23, 2016, the Administrative Law Judge rendered an unfavorable decision against Mr. H.'s application for a period of disability and disability insurance benefits. *Administrative Record,* Attach. 2, *Administrative Process Docs.* at 30-42 (ECF No. 9). On May 13, 2016, Mr. H. appealed the unfavorable decision to the Appeals Council. *Id.* at 25. On May 26, 2016, the Appeals Council wrote Attorney Francis Jackson, Mr. H.'s lawyer, and notified him:

> You may send more evidence or a statement about the facts and the law in this case.
>
> Any more evidence must be new and material to the issues considered in the hearing decision dated March 28, 2016.

*Id.* at 22. On May 25, 2017, the Appeals Council sent Mr. H. a Notice of Appeals Council Action, informing him that it "plan[ned] to make a decision again finding you are not disabled." *Id.* at 12. The May 25, 2017 letter contained the following notice:

> You may send us a statement about the facts and the law in your case or additional evidence within 30 days of the date of this letter. We will consider additional evidence if it meets the rules we applied above.

*Id.* In the May 25, 2017 letter, the Appeals Council also wrote:

> Under our rules, we will review your case for any of the following reasons:
>
> We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is a reasonable probability that the additional

evidence would change the outcome of the decision. You must show good cause for why you missed informing us about or submitting it earlier.

On June 23, 2017, Attorney Jackson sent the Appeals Council the June 1, 2017 Dr. Dixon evaluation. *Administrative Record*, Attach. 6, *Disability Related Development, Letter from Att'y Jackson to Hon. Jeffrey Kirkwood and Hon. Adelaide Edelson* at 90-93.

## B. The Appeals Council Decision

After receiving Attorney Jackson's June 23, 2017 letter, the Appeals Council issued its September 19, 2017 decision, concluding that Mr. H. "is not entitled to or eligible for a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, or Supplemental Security Income payments under sections 1602 and 1614(a)(3)(A) of the Social Security Act." *Administrative Record* Attach. 2, *Docs. Related to Administrative Process* at 2-9. Regarding Dr. Dixon's evaluation, the Appeals Council wrote:

> The claimant submitted an opinion from Dr. Dixon dated June 2, 2016 (4pgs). . . The Administrative Law Judge decided your case through March 28, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 28, 2016.

*Id.* at 5-6.

## C. Dr. Leslie Susan Dixon's June 1, 2016 Evaluation

The Administrative Record contains an "Employability Form" Dr. Dixon completed on June 1, 2016 for the state of Maine Department of Health and Human Services (DHHS), Family Interdependence Office. *Administrative Process Docs.* at 21. Maine DHHS asked Dr. Dixon to complete three categories in the form: (1)

5

physical abilities and limitations, (2) mental abilities and limitations, and (3) other. *Id.* Dr. Dixon completed the physical abilities and limitations section with express reference to a prior evaluation of September 2015 by Dr. Phelps. *Id.* ("per R. Phelps prior evaluation 9/2015"). The record contains a Complete General Medical Physical Examination Report by Robert N. Phelps, Jr., M.D., an orthopedic surgeon, dated September 14, 2015. *Administrative Record*, Attach. 8, *Med. Records* at 728-35. Dr. Dixon's completion of the physical abilities and limitations portion of the form is consistent with Dr. Phelps' conclusions.

Dr. Dixon's completion of the second part of the form, the mental abilities and limitations, indicates that Mr. H. was "extremely limited" in (1) "Remember work location and work procedures," (2) "Carry out instructions," (3) "Maintain attention and concentration," (4) Perform activities within a schedule," and (5) "Sustain an ordinary routine." *Administrative Process Docs.* at 21. Dr. Dixon concluded that Mr. H. was "markedly limited" in his ability to "interact with [the] general public." *Id.*

The third part of the form, "other," contained additional information. First, she said that Mr. H. was not expected to have surgery. *Id.* She said she had last examined Mr. H. on May 10, 2016 and that his limitations began in 1993 and "then May 2012." *Id.* She stated that Mr. H. will need "medical management every month-bimonthly." *Id.* When asked her diagnoses, she wrote: "ADHD combined type – severe (despite meds), Mood Disorder, Panic Disorder without agoraphobia, Chronic neck, back, shoulder pain hypertension (Degenerative Disc Disease Osteoarthritis)." Dr. Dixon opined that Mr. [H.] is "unable to work." She described his "Functional

6

Limitations" as "Chronic pain with physical impairment, anxiety, mood liability with an asterisk." Directly below are three asterisks for "*inattention *poor organization *memory limitations." *Id.*

### D. The Recommended Decision

The Magistrate Judge concluded that because Dr. Dixon referred to Dr. Phelps' 2015 evaluation and because she reported that Mr. H.'s limitations began in 1993 and then in May 2012, her opinion, contrary to the Appeals Council's decision, did in fact relate to the period at issue. *Recommended Decision* at 9-10 ("The mere fact that a medical opinion is based in part on an examination that occurred after the date of the ALJ's decision does not foreclose the examining medical expert from offering an opinion on the duration of a medical condition"). The Magistrate Judge also concluded that the Appeals Council's refusal to consider Dr. Dixon's opinion was not harmless error. *Id.* at 13-14.

## III. DISCUSSION

### A. The Appeals Council's Failure to Consider Dr. Dixon's Evaluation

In her objection to the Recommended Decision, the Commissioner argues that any error in failing to consider the employability form was "harmless, and cannot serve as the basis for remand . . . because the employability form is cumulative of evidence from acceptable medical source Dr. Robert Phelps," and because Mr. H. failed to provide "any evidence that Dr. Dixon performed any type of objective physical examination of him." *Def.'s Obj.* at 7-8.

Although the Commissioner's response assumes that the Appeals Council erred, albeit in her view harmless error, to provide context, the Court turns to the error itself. In its decision, the Appeals Council refused to consider Dr. Dixon's opinion because the "additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 28, 2016." *Administrative Process Docs.* at 5-6. This conclusion is contradicted on its face by the Dixon evaluation. In her June 1, 2016 evaluation, Dr. Dixon clearly says that the limitations began in 1993 and then in May 2012.

The Commissioner's argument selectively characterizes Dr. Dixon's evaluation. Dr. Dixon's form confirms that she completed the "Physical Abilities and Limitations" portion of the employability form based on Dr. Phelps' 2015 evaluation. As to this portion of the Dixon form, Dr. Dixon's opinions were cumulative. But Dr. Dixon's opinions in the "Mental Abilities and Limitations" section of the form do not rely on Dr. Phelps' evaluation, and Dr. Dixon completed this portion of the form after she examined Mr. H. on May 10, 2016. *Administrative Process Docs.* at 21 ("Date of last exam? 5/10/16").

In this portion of the form, Dr. Dixon opines that Mr. H.'s ability to remember work location and work procedures, to carry out instructions, to maintain attention and concentration, to perform activities within a schedule, and sustain an ordinary income are "extremely limited." *Id.* She further assesses Mr. H.'s ability to "interact with the general public" as "markedly limited." *Id.* She notes in the "Other Information" section of the form that Mr. H. has diagnoses of "ADHD combined type-

8

severe (despite meds), mood disorder, panic disorder without agoraphobia, chronic neck, back and shoulder pain, hypertension, degenerative disc disease, and osteoarthritis." *Id*. Furthermore, Dr. Dixon's assessment, as the Magistrate Judge noted, was that Mr. H.'s "chronic pain, including pain from degenerative disc disease and osteoarthritis, significantly restricts Plaintiff's ability to stand, walk and sit for appreciable durations." *Recommended Decision* at 12. Dr. Dixon concludes that Mr. H. is "unable to work." *Id.* Because Dr. Dixon's evaluation of Mr. H.'s mental health is not cumulative of other evidence and because the evidence in this record confirms that Dr. Dixon evaluated his mental abilities and limitations, the Court concludes that the Commissioner's argument that Dr. Dixon's evaluation was merely cumulative is unsupported by the record.

The Social Security Administration's own regulation states that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Yet, the Appeals Council refused to consider Dr. Dixon's evaluation, which was medical evidence, in violation of its own regulation. Moreover, because the Appeals Council solicited the report from Mr. H., promised to review it if it complied with the Appeals Council's rules, and then ignored it, citing an erroneous basis for doing so, the Court views the Appeals Council's refusal to consider the Dixon report as egregious.

The remaining question is whether, in light of the Appeals Council's failure to consider Dr. Dixon's evaluation, its determination is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human*

9

*Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) ("The standard of review of the Commissioner's decision is whether the determination made is supported by substantial evidence"). Stated differently, "the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). *Robert W. v. Berryhill*, No. 2:17-CV-00359-DBH, 2018 WL 3219444, at *1 (D. Me. July 2, 2018), *report and recommendation adopted*, No. 2:17-cv-359-DBH, 2018 WL 3448208 (D. Me. July 17, 2018).

Here, the Magistrate Judge determined that, in light of the Appeals Council's failure to consider Dr. Dixon's report, its decision is unsupported by substantial evidence. The Recommended Decision reasons that "[g]iven that Dr. Dixon has assessed disabling limitations based, in part, on chronic back pain and ADHD impairments that the ALJ found non-severe, the record does not suggest that remand would be an 'empty exercise.'" *Recommended Decision* at 13. The Court's analysis of Dr. Dixon's evaluation does not change this result. Although the Court finds that Dr. Dixon's evaluation was cumulative of evidence examined by the ALJ with regard to chronic back pain, Dr. Dixon's assessment of Mr. H.'s ADHD impairment runs contrary to the ALJ's determination that his ADHD is not a severe condition, as she concludes that Mr. H.'s mental limitations render him unable to work. *Administrative Process Docs.* at 21.

The Court views Mr. H.'s case as similar to *Hamm v. Berryhill*, No. 2:16-cv-00627-DBH, 2017 WL 4918514, 2017 U.S. Dist. LEXIS 179925 (D. Me. Oct. 31, 2017), *report and recommendation adopted*, No. 2:16-CV-627-DBH, 2017 WL 6029588, 2017 U.S. Dist. LEXIS 199453 (D. Me. Dec. 5, 2017). In *Hamm*, the ALJ's and the Appeals Council's failure to consider a medical evaluation—a Veterans Administration disability decision and underlying records—was deemed "egregious error" requiring remand. *Id.* 2017 U.S. Dist. LEXIS 199453, at *6. Although there are some differences between *Hamm* and this case, the basic principle is the same: neither the ALJ nor the Appeals Council are "at liberty to ignore medical evidence." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

On this basis, the Court affirms the Magistrate Judge's recommendation vacating the administrative decision and remanding the matter for further proceedings.

### B. Dr. Dixon as a Treating or Examining Source

In his Recommended Decision, the Magistrate Judge stated:

> Even if Dr. Dixon first met with Plaintiff after the ALJ issued her decision . . . [she] had access to Plaintiff's longitudinal records, some of which she referenced, and the benefit of an examination of Plaintiff. Dr. Dixon's opinion, therefore, constitutes the opinion of an established treatment provider regarding the relevant time period . . . The Appeals Council, therefore, should have discussed the opinion and, in the event it found the opinion unpersuasive, provided "good reasons" for rejecting it.

*Recommended Decision* at 13 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 333 n.4 (E.D.N.Y. 2016)). Under the "treating source rule," the opinion of a treating physician may be rejected only for

11

good reasons. 20 C.F.R. § 404.1527(d)(2), *Smythe v. Astrue*, No. 2:10-CV-251-GZS, 2011 WL 2580650, at *4 (D. Me. June 28, 2011), report and recommendation adopted, No. 2:10-CV-251-GZS, 2011 WL 2942733 (D. Me. July 21, 2011).

The Commissioner and Mr. H. strongly disagree about whether the Magistrate Judge erred in determining that Dr. Dixon was a "treating source" under the regulations and caselaw. The Court considers this a close question.

Section 404.1527(a)(2) defines a "treating source" as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." The provision further states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and or/evaluation required for your medical condition(s).

§ 404.1527(a)(2).

Courts have typically interpreted this provision to require multiple visits with a medical provider for the provider to be deemed a "treating source." *See Carson v. Barnhart*, 242 F. Supp. 2d 33, 37 (D. Me. 2002) (holding that a physician who saw a plaintiff once to evaluate him for an insurer is not a treating physician); *Jessica B. v. Berryhill*, No. 1:17-CV-00294-NT, 2018 WL 2552162, at *4 (D. Me. June 3, 2018), *report and recommendation adopted*, No. 1:17-CV-294-NT, 2018 WL 4289314 (D. Me. Sept. 7, 2018) (concluding that a medical provider who on the same day, "met with the plaintiff for the first time, examined her, and completed a form titled "Medical

Source Statement of Ability To Do Work-Related Activities (Mental)" was not a treating source); *Smythe*, 2011 WL 2580650, at *4 ("A onetime examining consultant is not a 'treating source'"); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (a physician who had been "in a professional relationship with [the Plaintiff] for merely two months" is not a treating source, but is "effectively reduce[d] . . . to the status of an examining-source").

Consistent with this approach, courts have largely rejected the contention that a patient's visits with multiple doctors in the same practice creates an "ongoing treatment relationship." There is authority in this District for the view that a treatment relationship does not exist simply because the physician "had access to the plaintiff's records of treatment by other professionals" at the same practice; the concern is that under this approach, an "applicant could simply choose a more favorable treating source, see him or her once and provide him or her with all . . . previous treatment records, and the commissioner would have to treat the new treating source as if the treatment relationship had gone on for many years." *Brown v. Astrue*, 2010 WL 5261004, at *3 n.4; *see also Jessica B.,* 2018 WL 2552162, at *4.

With this said, the situation presented in this case strikes the Court as potentially different from *Brown* and *Jessica B.* Mr. H. had been a patient at Maine Behavioral Healthcare from February 13, 2015 through at least January 4, 2016, when the records stop. As with many modern medical practices, a physician's assistant, Stacey Beneck, provided mental health treatment for Mr. H. about every twelve weeks during this entire time under the supervision of Thor Agustsson, D.O.,

13

who countersigned all the patient visit notes. *Administrative Record*, Attach. 7, *Med. Records* at 628-52, Attach. 8, *Med. Records* at 767-84. ALJ Cutter gave "little weight" to PA Beneck's opinions in part because she is "not an acceptable medical source" and because in ALJ Cutter's view, PA Beneck's "findings are not consistent with medical evidence of record as a whole." *Administrative Record* Attach. 2 at 35.

Assuming that Dr. Agustsson's opinions as Ms. Beneck's supervising physician would have been acceptable, the exact status of Dr. Dixon, who was part of the Maine Behavioral Healthcare practice and also examined Mr. H., is unclear. Except for the May 20, 2016 Dr. Dixon examination, there is no evidence whether Mr. H. continued to treat at Maine Behavioral Healthcare after January 4, 2016, whether Dr. Agustsson continued to supervise P.A. Beneck's mental health treatment of Mr. H., and whether Dr. Dixon assumed the role of supervisory physician over P.A. Beneck, replacing Dr. Agustsson. Even if the Commissioner's regulations prohibited physician assistants like P.A. Beneck from expressing medical opinions, *see Drew v. Social Security Admin. Comm'r*, No. 1:11-cv-00240-GZS, 2012 U.S. Dist. LEXIS 67679, at *8-10 (D. Me. Apr. 27, 2012), Dr. Dixon's opinions as a medical doctor would not have been so cabined. Moreover, Dr. Dixon's opinions might have fit within the definition of treating source if she had assumed responsibility for Mr. H.'s mental health care.

In addition, although the form suggests that Dr. Dixon had access to at least one of Mr. H.'s longitudinal records, namely the Dr. Phelps evaluation, it is unclear from the record whether Dr. Dixon and Dr. Phelps maintain a practice affiliation or

14

whether Dr. Dixon had access to additional records. *Id*. This differs from the circumstances of *Blevins v. Berryhill*, No. 5:16-CV-310-WTH/CAS, 2017 WL 6330823, at *3 (N.D. Fla. July 7, 2017), report and recommendation adopted, No. 5:16-cv-00310-WTHCAS, 2017 WL 6329956 (N.D. Fla. Dec. 11, 2017), on which Mr. H. relies for the proposition that a treating relationship can be derived from seeing multiple providers within a practice. In *Blevins*, the medical provider referenced "a wealth of information from several providers including records of an ongoing relationship between March 2013 and June 2016 and between Plaintiff and the treating physicians at BSC where Dr. Elzawahry practices." 2017 WL 6330823, at *10.

With these principles in mind, neither the ALJ nor the Appeals Council reached the question of what role Dr. Dixon was assuming when she performed the May 20, 2016 examination and completed the June 1, 2016 evaluation form because the Dr. Dixon examination and assessment took place after the ALJ issued her decision and because the Appeals Council refused to consider her opinions in reaching its ruling. As the case requires remand regardless of the resolution of this issue, the Court views this issue, as framed, as an advisory opinion, one that may not be reached depending upon the Appeals Council's determination. If the Appeals Council concludes that Dr. Dixon's opinion, regardless of how it is characterized, causes a different result, it may not reach whether Dr. Dixon was a treating or evaluating source. Yet, the Appeals Council may determine that it is necessary to clarify Dr. Dixon's role before assessing the weight to be given her opinion. It is preferable, in this Court's view, to give the Appeals Council an opportunity to state how it

15

characterizes Dr. Dixon's evaluation and, if the parties remain dissatisfied, for this Court to rule based on a considered opinion from the Appeals Council.

## IV. CONCLUSION

The Court finds that the Appeals Council's decision is unsupported by substantial evidence, and affirms the Magistrate Judge's recommendation vacating the administrative decision and remanding the matter for further proceedings.

1. It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge (ECF No. 19) is hereby <u>AFFIRMED</u>.

2. It is further <u>ORDERED</u> that the Commissioner's decision be and hereby is <u>VACATED</u>.

3. It is further <u>ORDERED</u> that the Commissioner's Motion to Strike Response to Objection to Report and Recommended Decision is <u>DISMISSED</u>.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of February, 2019